UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JANE DOE, as Parent and Natural Guardian,
on behalf of ADAM DOE, a Minor

                           Plaintiff,

                   - against -

DEER MOUNTAIN DAY CAMP, INC.
and DEER MOUNTAIN BASKETBALL
ACADEMY

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civ. No. **07 CIV. 5495**

**COMPLAINT**

JUDGE CONNER

FILED
U.S. DISTRICT COURT
S.D. OF N.Y. W.P.
2007 JUN 11  A  9: 23

## PRELIMINARY STATEMENT

1.      Twelve-year-old plaintiff, Adam Doe, and his parent/natural guardian, Jane Doe, bring this action against defendants Deer Mountain Day Camp, Inc. and Deer Mountain Basketball Academy to seek redress for their discriminatory refusal to permit Adam Doe to attend a one-week summer basketball day camp because he is HIV positive.  Defendant's exclusion of Adam Doe on the basis of his disability violated the Americans with Disabilities Act, 42 U.S.C.S. § 12101, *et seq*., and the New York Human Rights Law, N.Y. Exec. Law § 292 *et. seq.*

2.      As redress for defendants' discriminatory conduct and for the resulting severe emotional and psychological harm Adam Doe suffered, Adam Doe seeks a declaration that defendants' conduct violated the Americans with Disabilities Act and the New York State Human Rights law, compensatory damages, injunctive relief and attorney's fees and costs.

## JURISDICTION

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4.   This Court has authority pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure to grant the requested declaratory and other appropriate relief.

5.   This Court has authority pursuant to 42 U.S.C. §§ 12188(a) and 2000a-3(a) and the New York Human Rights Law, N.Y. Exec. Law § 297(9), to grant the requested injunctive and other appropriate relief.

6.   This Court has authority to award attorney's fees and costs pursuant to 42 U.S.C. §§ 12188 (a) and 2000a-3(b).

## VENUE

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this Judicial District.

## PARTIES

8.     Plaintiff, Adam Doe, is a twelve-year old minor child who has had the Human Immunodeficiency Virus (HIV) since birth as a result of perinatal infection.

9.     Adam Doe resides in Rockland County, New York, together with his adoptive mother and guardian, Jane Doe.

10.     Adam Doe and Jane Doe are identified by pseudonyms to protect Adam Doe from any stigma, discrimination, emotional distress and hardship that could result from publicly

2

disclosing his identity.  A motion on behalf of Adam and Jane Doe for leave to proceed under pseudonyms has been filed contemporaneously with this complaint.

11.     Defendant Deer Mountain Day Camp ("DMDC" or the "day camp") is a closely held corporation organized under the laws of New York State.  Its principal executive office is located at 5 Ungava Drive, New City, New York, 10956 in Rockland County.

12.     DMDC owns and operates a summer day camp located at 63 Call Hollow Road, Pomona, New York, 10970 in Rockland County.

13.     Upon information and belief, defendant DMDC also owns and operates in Rockland County, either separately or under the auspices of DMDC, a basketball camp for boys and girls entering second through ninth grade, which does business under the name of Deer Mountain Basketball Academy ("DMBA" or the "basketball academy").

14.     DMDC and DMBA are operated as for-profit enterprises open to the public.  They are not operated as private clubs or religious organizations.

## FACTUAL ALLEGATIONS

15.     In July 2004, plaintiff Adam Doe, who was ten years old and about to enter the fifth grade, wanted to enroll in defendants' basketball academy.

16.     Adam Doe was then and is now an avid basketball player.  At the time of the incidents at issue in this lawsuit – as well as currently – he played competitive basketball in his local Catholic Youth Organization and Police Athletic League.

3

17.     In July 2004, Adam Doe and his mother and guardian, Jane Doe, met with Stephen Loscher, who identified himself as the Director of the Deer Mountain Basketball Academy, to discuss enrolling Adam in a one-week session (the "July 2004 meeting").

18.     During the July 2004 meeting, Jane Doe told Mr. Loscher that Adam Doe was HIV positive.  Mr. Loscher responded that he did not believe that Adam's HIV status would interfere with his admission to and participation in the basketball academy.  Mr. Loscher did, however, suggest that Adam attend the basketball academy session to be held in August 2004 on the grounds of DMDC where a nurse would be on site, rather than the earlier session about which the Does had inquired about and which met in a different facility.  While Jane Doe did not believe that Adam needed to be in a facility with a nurse on site, she nevertheless agreed to have Adam attend the August 2004 session recommended by Coach Loscher.

19.     During that same July 2004 meeting, Jane Doe gave Mr. Loscher $345 in cash (full payment of one week's tuition) to ensure a spot for Adam Doe at the August session.

20.     In or about August 2004, a representative from DMDC notified Jane Doe that DMDC would hold open a spot for Adam Doe at the basketball academy's August 23-27, 2004 session.

21.     Adam Doe was extremely excited about the prospect of attending the basketball academy and told numerous friends about his plans.  Jane Doe spent

4

approximately $250 on new basketball sneakers and a uniform for Adam in anticipation of his attending the basketball academy.

22.    Defendants gave Jane Doe two medical forms for Adam Doe's physician to complete in advance of camp: a "Medical Report" and "Camper's Medication Form" (jointly, the "medical forms"). Upon information and belief, all applicants to the basketball academy were required to have a physician complete these forms.

23.    Jane Doe asked Adam's pediatrician, Dr. William Bernstein of the New City Pediatric Group, to complete and return the medical forms to DMDC prior to the start of the camp. Dr. Bernstein had been Adam's pediatrician since Adam was an infant and was very familiar with his health condition.

24.    The "Medical Report" form which Dr. Bernstein completed contained the following question: "IS THERE ANY INFORMATION CONCERNING YOUR CHILD'S HEALTH THAT THE CAMP SHOULD KNOW?" In response to that question, Dr. Bernstein wrote "HIV-Positive – under care and antiviral Rx."

25.    Elsewhere on the Medical Report, in an area seeking information about problems concerning lungs, heart, eyes, ears, nose, throat, uro-genital, orthopedic, and gastro-intestinal, Dr. Bernstein noted no problems, but separately wrote "HIV Positive – under Rx."

26.    The Medication Report required the physician to list all current prescription medications. Dr. Bernstein listed three of Adam's HIV medications: Viracept, Zerit and Epivir.

27.    The medical forms did not ask any questions about the applicant's fitness to attend camp or whether the applicant had any medical conditions that affected his/her ability to participate fully in camp activities.

28.    Upon information and belief, on or about August 21, 2004, a woman who identified herself as a nurse working for defendants (the "DMDC nurse"), called the New City Pediatric Group to follow up on Adam Doe's medical forms which Dr. Bernstein had completed and returned to DMDC. Upon information and belief, Dr. Bernstein was not available, and therefore, the nurse spoke to Dr. David Levy, a pediatrician in Dr. Bernstein's practice group.

29.    Upon information and belief, the DMDC nurse asked Dr. Levy questions about the transmissibility of Adam's HIV to others at camp, e.g., through the pool or the toilets.

30.    Upon information and belief, Dr. Levy told the DMDC nurse that if that the basketball academy used "universal precautions," the risk of Adam's transmitting the virus to other campers or staff was so remote as to be "infinitesimally small."

31.    Upon information and belief, Dr. Levy also told the DMDC nurse that there was no medical reason why plaintiff could not participate fully in all the basketball academy activities and that he believed that Adam currently played competitive basketball in leagues.

32.    On or about August 21, 2004, just two days before Adam Doe was to begin camp at the basketball academy, Jane Doe received a phone call from Roberta Katz, who upon information and belief, is a director and owner of DMDC. During this call, (the "August 21st phone call"), Ms. Katz told Jane Doe that defendants were denying Adam Doe admission to the basketball academy because Adam was HIV positive.

33.     During the August 21st phone call, Ms. Katz told Ms. Doe in form or substance that she "did not have enough time to research whether the camp was appropriate" and that, "you know, this is not an arts and crafts camp; your child can get hurt."

34.     Following the August 21st phone call, Jane Doe told Adam that he was denied admission to the basketball academy because he is HIV-positive.

35.     Upon information and belief, on or about August 23, 2004, defendants returned the tuition previously paid by Jane Doe.

36.     Adam Doe was emotionally devastated by defendants' exclusion of him from the basketball academy. Defendants' exclusion directly and proximately caused Adam Doe to feel both isolated and different from his friends and also caused him great embarrassment, shame, humiliation and profound sadness and anger.

37.     Defendants' illegal and discriminatory exclusion of Adam Doe from the basketball academy directly and proximately caused Adam Doe to suffer severe mental and emotional distress for which he received psychiatric care.

38.     Defendants had no medical, scientific or rational basis to deny Adam Doe admission to the basketball academy. Defendants knew or should have known that Adam's HIV-positive status did not pose a risk to the health or safety of Adam or others at the basketball academy. Defendants knew or should have known that Adam did not have any medical conditions that would impair his ability to participate fully in basketball academy activities.

39.     The American Camp Association's ("ACA") website states that it is illegal for camps covered by the Americans with Disabilities Act to deny enrollment to individuals with

7

HIV or AIDS. The website also notes that the ACA's own health form does *not* include a question about HIV status because camps are legally required to use universal precautions and "to train staff and provide appropriate protective equipment to implement this mandate." http://www.acacamps.org/knowledge/health/hlthexamform.php.

40.    Several other professional associations have recommended that HIV-positive individuals be permitted to participate equally in sports. The American Academy of Pediatrics policy statement says that "[b]ecause of the very low probability of transmission of their infection to other athletes, athletes infected with HIV, . . . should be allowed to participate in all sports." (*Human Immunodeficiency Virus and Other Blood-borne Viral Pathogens in the Athletic Setting* at 56, http://aappolicy.aappublications.org/cgi/content/full/pediatrics;104/6/1400).

41.    National Collegiate Athletic Association guidelines advise that there be "no recommended restriction of student athletes merely because they are infected with HIV." (*NCAA Guidelines 21 Blood-Borne Pathogens and Intercollegiate Athletics* at 56, www.ncaa.org/library/sports_sciences/sports_med_handbook/2006-07/2006-07_sports_medicine_handbook.pdf). The guidelines note that "there have been no validated reports of transmission of HIV in the athletics setting." *Id.*

42.    A joint position statement by the American Medical Society for Sports Medicine and American Orthopaedic Society for Sports Medicine also recommends against excluding athletes with HIV and, instead, recommends use of universal precautions and other measure to "further minimize the low risk of transmission" of all blood-borne pathogens during sports.

8

*(Human Immunodeficiency Virus (HIV) and Other Blood-Borne Pathogens in Sports,*
http://www.newamssm.org/hiv.html).

### First Cause of Action:
### <u>Violation of the Americans with Disabilities Act</u>

43.    Plaintiff repeats and reallege each paragraph above as though fully set forth
herein.

44.    Title III of the Americans with Disabilities Act (ADA) prohibits discrimination
against individuals on the basis of disability in the full and equal enjoyment of the services of
any place of public accommodation.  42 U.S.C. § 12182, *et seq.*; 28 C.F.R. § 36.102 *et seq.*

45.    Plaintiff Adam Doe, as an individual with HIV, is a person with a disability
within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 36.104.

46.    A camp is a "place of public accommodation" as defined by 42 U.S.C. § 12181(7)
and 28 C.F.R. § 36.104.

47.    Defendants DMDC and DMBA own or operate a "place of public
accommodation" as defined in 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, and are, therefore,
subject to the anti-discrimination provisions of Title III of the ADA, 42 U.S.C. § 12182(a) and
28 C.F.R. § 36.201 *et seq.*

48.    By denying Adam Doe admission to the basketball academy because of his HIV
status and denying Adam Doe the "full and equal enjoyment of the goods, services, facilities,
privileges, advantages or accommodations" of DMBA, defendants discriminated against Adam
Doe on the basis of his disability in violation of  42 U.S.C. § 12182(a) and 28 C.F.R. §§
36.201(a).

49.     Through their actions, defendants also:

(a)     denied Adam Doe the opportunity to "participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations" of the basketball academy, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202(a);

(b)     utilized "standards or criteria or methods of administration that have the effect of discriminating on the basis of disability" in violation of 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204;

(c)     imposed or applied eligibility criteria that "screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying its goods, services, facilities, privileges, advantages or accommodations," in violation of 42 U.S.C. § 12182(b)(2)(A)(i); and

(d)     afforded Adam Doe with an unequal benefit in regard to their offering provision of goods, services, facilities, privileges or accommodations on the basis of his disability, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202(b).

50.     Defendants' discrimination directly and proximately caused Adam Doe to sustain severe and lasting emotional and psychological harm, as well as monetary harm.

## Second Cause of Action:
## Violation of New York State Human Rights Law

51.     Plaintiff repeats and realleges each paragraph above as though fully set forth herein.

52.     The New York Human Rights Law (NYHRL) makes it an unlawful discriminatory practice for any place of public accommodation to refuse, withhold from or deny

any of its accommodations, advantages or facilities or privileges on the basis of disability.  N.Y.

Exec. Law § 296(2).

53.    DMDC (including its division, the basketball academy) constitutes a place of

public accommodation under § 292(9) of the NYHRL.

54.    As an individual with HIV, Adam Doe is a person with a "disability" within the

meaning of  § 292 (21) of the NYHRL.

55.    By denying Adam Doe admission to the basketball academy, defendants refused,

withheld from and denied plaintiff "the accommodations, advantages, facilities or privileges" of

a "place of public accommodation" on account of his disability and committed an unlawful

discriminatory practice in violation of § 296(2) of the NYHRL.

56.    Defendants' discrimination directly and proximately caused Adam Doe to sustain

severe and lasting emotional and psychological damage as well as monetary harm.

### Prayer for Relief

**WHEREFORE,** plaintiff Adam Doe respectfully requests that this Court:

1.    Declare, pursuant to 28 U.S.C. § 2201, that by denying Adam Doe admission to

the Deer Mountain Basketball Academy on the basis of his disability, defendants discriminated

against Adam Doe in violation of both the Americans with Disabilities Act, 42 U.S.C. §12182

*et seq.* and 28 C.F.R. § 36.201 *et. seq.*, and the New York State Human Rights law, Executive

Law § 296.

2.      Pursuant to the New York Human Rights Law, Executive Law § 297(9), award such damages, in an amount to be determined at trial, as will fully compensate Adam Doe for injuries caused by defendants' discriminatory conduct.

3.      Pursuant to 42 U.S.C. §§ 12188(a), 2000a-3(a) and Executive Law § 297(9), enjoin defendants from maintaining or applying policies and practices that discriminate against prospective participants and participants in DMDC and DMBA on the basis of HIV status.

4.      Pursuant to 42 U.S.C. §§ 12188 (a) and 2000a-3(b), order defendants to pay costs in this suit and reasonable attorneys' fees.

5.      Grant such other and further relief as this Court determines to be just and proper.

Dated:   May 29, 2007
         New York, New York

                                        Respectfully submitted,


                                        RENEE D. MARTINEZ (RDM-0153)
                                        SALLY FRIEDMAN (SBF-3344)
                                        PAUL N. SAMUELS (PNS-9531)
                                        LEGAL ACTION CENTER
                                        225 Varick Street, 4th Floor
                                        New York, New York 10014
                                        (212) 243-1313
                                        Attorneys for Plaintiff


                                        HOWARD D. SHERWIN (HDS-2379)
                                        LEGAL AID SOCIETY OF ROCKLAND
                                          COUNTY, INC.
                                        2 Congers Road
                                        New City, New York 10956
                                        (845) 634-2627
                                        Attorney for Plaintiff


12